Good morning, your honors. May it please the court. I'm Jack Zucker, lawyer for appellant Kinzey Shaw. I've reserved eight minutes for my principle argument and then two minutes for my rebuttal argument. I'm going to start with the basic background and summary of my arguments. On February 15, 2019, my May 15, 2019, she was sentenced to 132 months of imprisonment based upon the district court's adoption of an approximated drug quantity and a two-level sentencing enhancement for obstruction of justice. On appeal, I am arguing two points of error with respect to that sentence. The first point of error relates to the fact that there is no foundations to support the district court's approximated drug quantities. Although approximations are allowed, they still need to be based on sufficient foundation and there needs to be sufficient addition of reliability to support probable accuracy of those quantities. In this case, if we take a step back after the verdict was read, the and after the pre-sentence report, the government objected to that and recommended that the sentence actually be amended so that the drug quantity be 77 grams instead of the 11.69 grams that probation had recommended. And to support that, the government provided unfounded arguments rather than facts to get to those drug quantities. They came to the conclusion that there were seven transactions and within those seven transactions, there was one new bottle sold each time and each one of those bottles contained 11 grams in each bottle. The problem with that is that there was no evidence at trial and nothing presented at sentencing to support the fact that there was a evidence trial, nothing presented at sentencing to say that any, if there were separate bottles, that they were the same or similar weights. So with that, I think that there's a couple of cases that are instructive and in support of our position in terms of like what kind of foundation and specificity is required, but I look just to the Colbert decision that we've cited in our briefing and in that case, this court affirmed an approximated drug quantity that was based upon recordings of the defendant's phone calls and then also testimony at trial from three co-conspirators who testified about specific amounts of I thought that there was evidence at the trial of six transactions, six bottles being distributed and that each of those had 11 grams. Is that not right? I'm arguing it's incorrect, Your Honor. I think that that's based upon the argument, that's the argument of the government, but there wasn't anything at trial that was actually to say that there were separate bottles each time and there wasn't anything about the drug weight. So nobody testified, for example, that each time that there was a transaction that there was a new bottle purchased or that there was... Are you suggesting the same bottle was in each transaction? I'm saying that's a possibility. There's multiple inferences that could be read because there wasn't that foundation that was laid at trial. All right, but our standard of review here though, it's clear error? Correct, Your Honor. All right, I think you have to come up with more than just a possibility, right? To become a clear error finding? Your Honor, my problem in this case is that it reminds me of in the civil world, which is what I deal with, there's a jury instruction about direct versus circumstantial evidence and the problem in this case is that the inferences that were made by the non-reasonable inferences because there were many other possible explanations... My recollection of that instruction is that both of those count as evidence almost equally. Am I misrecalling that instruction? From the civil world? Yeah. Your Honor, what I'm getting at is, you know, the snow falling on the ground, if you see it, that's direct evidence. If you wake up in the morning and there's snow on the ground, that's circumstantial evidence because there's only one explanation. This case to me seems more like a situation where if you wake up in the morning and there's a pile of dirt in your driveway, there's many possible explanations if you just have that piece of evidence alone and that's what we have here is that there's nobody testifying about specific routine amounts and the weight that was purchased each time. You can't draw the inference that it's a specific weight or that there was even a purchase of a drug. I'm arguing that there's no foundation to support the district court's drug quantity and I'm asking that the court amend the sentence to reflect the drug quantity of 11.69 grams in a base offense level of 24, which was provided in the initial pre-sentence report. My second point on appeal here is that there's no foundation of support in obstruction of justice enhancement. For the obstruction of justice enhancement, the court must find predicate facts supporting the enhancement by anonymous of evidence and in this case what was testified to a trial and there wasn't anything additional presented during sentencing was both Ms. Ironshield and Redshirt testified that when they were holding together with Kinsey Shaw that Kinsey quote asked to not tell on her and so the problem is that when the district court relied on its recollection and the government's arguments the district court's recollection was different from what Ironshield and Redshirt testified to because now we've got the benefit of the transcript. The district court specifically said I have clear recollection Ms. Shaw attempted to quote convince two witnesses to not tell law enforcement authorities about her drug distribution activities end quote. Isn't that a reasonable inference from speaking of reasonable inferences from don't tell on me when they're in the lockup? Your honor I don't think it is a reasonable inference because there's nothing the subject matter wasn't stated in the vague and ambiguous statement. If you're just saying don't don't tell on me or please don't tell on me the listeners also not stated so there's not a subject matter of drugs and there's also not a listener of the law enforcement authorities. For all I know I mean it could be something where you're saying please don't tell my friends and family because it's embarrassing to get arrested. So I think that there's multiple reasonable inferences and I don't think it's appropriate to jump to the conclusion if the foundation was laid it'd be different but the court's recollection was not what was actually testified to at trial and for that reason I'm asking that the court look to the actual evidence from trial and because it doesn't support an obstruction of justice enhancement I'm asking that the have for my rebuttal your honors. Very well thank you Mr. Zuger. The court will now hear from Mr. McCabe. Good morning your honor please the court and Mr. Volk Mr. Zuger. The first issue in Mr. Basics case is of course whether he is actually a part of the conspiracy your honors with Ms. Shaw and as pointed out in the brief there has to be an agreement and I understand and I can appreciate Mr. Volk has gone into great detail on the government's behalf to show what is required for that agreement but at best here it seems to me we have Ms. Shaw talking about things and of course Mr. Basic is there in the presence but I don't believe the government established even circumstantially that there was an actual agreement between Mr. Basic and Ms. Shaw as to a conspiracy to deliver all these all this fentanyl so I mean I know that's probably the the weakest argument in my case but I think it's important to look at it and I I think there should be some meat put into this there's not a lot of case law on the issue other than I mean I mean there's case law on the circumstantial there's case law on direct but I guess I would really ask that the court look at this from the standpoint of whether or not there was enough evidence on a de novo standard and I know it in the brief I didn't write the brief but the brief says it's it's a different standard obviously it's de novo so I would argue from a de novo standpoint there there was not enough and there should not be enough to establish an agreement in the case as far as the what about the testimony of Otremba yeah he's their basic witness I mean that was the witness to establish whether or not there was a conspiracy but all he's talking about is Miss Shaw coming over and talking about selling drugs there's you know mr. mr. basic doesn't say anything to my understanding to to show that he's a part of this agreement it's dismissed shot I could be wrong but I thought Otremba testified the basic told him to go and get the spray bottles from Shaw's mother's apartment yeah I believe that but does that show an agreement is that circumstantial evidence of an agreement I guess that's that's pretty lengthy for can you know connecting that dot to a dot of of circumstantial evidence but I I don't know in what about didn't didn't Otremba also testified that basic told him to use the PayPal account to deposit money yes he did he did I isn't that enough well I the I guess the issue is where's the proof that basic and Shaw ever agreed I mean I understand mr. basic is using miss Shaw's account but where is the actual evidence of anything that the two actually agreed to this I mean what if I just asked somebody to use somebody's account you know I mean it could happen that seriously could happen and the other person doesn't even know about it and I understand and here we know that the miss basic and mr. basic and miss Shaw are married but but to me there's this no direct evidence there's not even circumstantial evidence that those two actually ever talked together about what they were going to do so to me there should be some concrete evidence of that to support that that's that's not the law the law doesn't require that there be direct evidence of an agreement we don't have to have a contract between the two to prove the existence of a conspiracy oh but how is somebody using a PayPal account circumstantial evidence I mean there's no proof that miss Shaw even or PayPal account was being used so anyway I to me that's that there should be something to show that you knew that that was being used or knew that mr. basic was was selling drugs with her I think the next point is is and I think you know the I think the brief sets forth a lot of examples from the notes from the guidelines about whether or not this is reasonably foreseeable for mr. basic and I think we start with the first premise that miss Shaw is providing mr. basic the drug so you know miss Shaw's is at the beginning and then mr. basic gets it from her and now we're to conclude that anything miss Shaw does even though she's actually is first she is holding mr. basic responsible for anything that miss Shaw does I think there's a real problem there particularly with all the points that are made from the notes as you walk through them I don't think it is reasonably foreseeable if you if you look at what she's done and what he knew about and I and I understand it's not the greatest threshold in the world about reasonably foreseeable but I think the brief makes a very good point about estimation versus speculation and and one thing about this reasonably foreseeable before we go on to the next issue is I think the court was supposed to make three findings I think the brief make sets forth a very good example of I mean basically there's a couple of pages from the judge on how he feels about this and whether it's foreseeable and I think the guidelines and the notes require that the court missed out on making factual findings not only of whether it was reasonably foreseeable but the other two requirements and and I don't think the court did his full job of making a finding that this was in furtherance of the criminal activity and within the scope I don't think the judge did that and and I know we're under a different standard now with this issue but but still I without making those findings there there isn't a sufficient basis to hold mr. basic accountable for miss Shaw's actions that he did not know about so and then the final issue is of course the quantity which I think both parties are arguing about I think mr. mr. basic doesn't have the bottle problem so much as miss Shaw does but with mr. basic missed you know there's a lot of but not actually giving the bottles and I think we're we're leaping to making a presumption that these bottles were given when it could be number one the same bottle and number two it's just shots from these bottles and yet the government's trying to argue that it's the bottle and and then I really have a problem with each bottle then containing this 11 grams I or you know that just doesn't seem appropriate when there's even the judge said there wasn't any evidence no you know judge Hovland said there wasn't any direct testimony that every spray bottle used contained the same amount of water and fentanyl this is what he said at the sentencing that one can draw a reasonable inference that occurred I don't know how he comes up with that because there wasn't any evidence and I don't even think circumstantially there was evidence then again I don't know how he comes up with that and those are his findings to suddenly make this leap that each of these sprays suddenly becomes you know a bottle and then suddenly becomes 11 in each bottle so I hope the court looks at this and and again there was a case cited about speculation versus estimation you know I think this is speculative I see you're into your thank you very well thank you mr. Volk the court will hear from the government thank you your honor and my name is Rick assistant United States attorney here in Bismarck North Dakota and unlike mr. Suger or mr. McCabe I was the trial attorney in this I think part or misapprehending some that are here and I'll try to address that as part of my argument but you know begin with a good luck talk about the drug quantity calculation that was made by the district court here and that was used to determine the peace offense level for time generally we're looking at here your honor where is here the amount of the drugs amount of drugs that were seized and in this case there was really only one nasal spray bottle that was weighed there were actually two that were seized but there was only that was weighed the court will the amount that sees does not reflect the scale of the offense conduct the district court was required under the guidelines and case law to approximate the quantity involved in the offense and that didn't have to be by mathematical precision not all of the nasal spray bottles had to be weighed but it had to have an evidentiary basis for what the trial court found in this case the district court judge did in fact have an evidentiary basis for what he found the drug quantity to be and he utilized the testimony that was presented at trial by the various witnesses in the district court judge articulated what he had heard these witnesses testified to he spoke primarily of the testimony of Tana Ironshield and Joseph Atremba and that he found it to be credible and he in this case now the trial judge sat this was the sentencing judge was the trial so what what was the testimony that you're referring to that allowed him to make the leap that there was 11 grams in each bottle so the testimony that was was provided was by Miss Ironshield and Mr. Atremba that the nasal spray bottles were being utilized to transfer the cyclopropyl fentanyl solution of that substance mixed with water and each of them testified that they on various occasions received either a spray from the bottle multiple sprays from the bottle or a bottle of nasal spray solution from these individuals one of them that was seized was a spray bottle from Ironshield at a halfway house here in Bismarck called Center Incorporated that was seized and it was weighed the solution that was inside that bottle was weighed and found in 11.69 grams of of cyclopropyl fentanyl solution so the total mixture was slightly more than 11 grams now we had both the other bottle that was seized was not weighed but it was of the same size the same operation these were simple generic type nasal spray bottles that were basically you have a tip on them and you squeeze them and spray into your nose they were they were in evidence both of those bottles were in evidence not only by photograph which are include those photographs are included in our brief in our addendum but the physical bottles were also present as exhibits for the board to see and see how they operated and they're both about one ounce in total and when the witnesses are talking about the various times they testified about the various times they acquired the nasal spray bottles they're the same type of bottles did they ever testify though that they were approximately the same level of being filled that are the same weight or that kind of thing they in fact miss Ironshield testified that she took the bottle back to Miss Shaw and had it refilled on multiple occasions and so the same bottle that had been found at Center Incorporated was in fact a bottle that she had had refilled by Miss Shaw on multiple occasions she also testified to a number of different times when she actually received the bottle from Miss Shaw otherwise so Miss Ironshield testified that she first acquired the opiate bottle from Miss Shaw at a gas station near the Motel 6 the trial judge found that to be credible and noted that in his findings she also received a bottle of the nasal spray solution from Miss Shaw at Miss Shaw's apartment she said she went back and refilled that same bottle on two or three other occasions at Miss Shaw's apartment she also testified that she had met Miss Shaw at a Walmart here in Bismarck and Miss Shaw was carrying a to her by spraying it into her nose Mr. Atremba testified that he was provided a spray bottle of that opiate solution from Mr. Basic and Miss Shaw at the apartment in Mandan that Mr. McCabe was talking about he also testified that he was provided the nasal spray bottle to use from Miss Shaw and Mr. Basic on multiple occasions during a trip that they made to Fargo North Dakota they were traveling in a car and effectively what Mr. Atremba said was I asked to use the solution the nasal spray solution miss miss Shaw was carrying it in her purse she retrieved it she gave it to mr. basic mr. basic used it he then passed it to me and this went on throughout the course of this trip when they arrived in Fargo they started shopping and again the same type of thing what happened mr. Atremba would ask to use the spray bottle it would be brought out by miss Shaw she would use she would pass it to mr. basic mr. basic would use and then he would pass it to mr. Atremba he also testified that this there was another time when the same type of nasal spray bottle was utilized at Buffalo Wild Wings here in Bismarck where again they were all together they all arrived at the Buffalo Wild Wings restaurant and he asked to use it mr. basic retrieved it from miss Shaw's purse they went out to the to the car or he and mr. basic utilized the spray in that bottle as well so effectively I identified those specific occasions for miss Shaw's case and equated those are the the personal distribution efforts by her that she utilized to transfer this solution so all of those nasal spray bottles either in their entirety or in transfer so in this case miss Shaw's argument is effectively the base offense level can only be the eleven point six nine grams that were found in the one year what the scope of her offense conduct was because she was utilizing and transferring multiple bottles and multiple sprays from the to other individuals so asking the trial court to find 11.69 and as the total drug quantity completely misstated what her offense on deck wasn't the trial court properly rejected that because the trial court was required approximate the total drug quantity involved here and when miss Shaw is transferring multiple bottles and multiple sprays of the bottle to to either miss iron shield or mr. a tremble it's way more than eleven point six nine grams in fact each occasion when we're dealing with a bottle of the similar size the one ounce bottles that utilize the similar function to squeeze and spray into the the trial court was perfectly appropriate in approximating that the solution in each of those bottles was approximately the same and again the trial court was not required to do this by mathematical precision you did not need each bottle weighed that's not required this is a historic type of describing how the solution containing the drug was transferred and in what container it was transferred in so it was perfectly appropriate for the trial court to make that type of finding and say there were at least seven occasions where miss Shaw did this and that's what gets us to the 77 grams total and the base offense level that trial for mr. basic is kind of in a similar situation this argument was effectively to the trial court as it is to this court well that none of the bottles that were seized from him were ever weighed so the trial court had to use less than one gram as the drug quantity well again that completely misstates the scope and level of mr. basics involvement in this case the trial court noted on multiple occasions what mr. basic had done and that was based upon primarily upon the testimony of Joseph Atremba as to what how many times he acquired nasal spray bottles from mr. basic and what he had with them and how they were transferred he testified that he came to Bismarck here about May and he first obtained sprays from the bottle from mr. basic at mr. basics apartment in Bismarck clear your honors when we're dealing with the conspiracy case as we are here this court has said multiple on multiple occasions that the drug quantity calculation includes not only the amount that is transferred to another individual but it also includes quantities that are held by the conspirator for personal use so in this in this case as mr. basic is taking a nasal spray bottle and spraying that spray into the nose of mr. Atremba it's it's not just the drug quantity that's going into mr. Atremba's nose it's the entire bottle that's part of the drug quantity so to suggest somehow that just small shots of this spray that are going up into the nose of the individual are the only amounts that are counted in the drug quantity calculation misstates the law and misinterprets what the what the had to calculate as far as the drug quantity so when mr. Atremba comes in and says I went to mr. basics apartment he retrieved a spray bottle and sprayed it in I know multiple times it's the entire spray bottle the quantity that's in that spray bottle that counts in the drug quantity calculation so that happened multiple times mr. Atremba but it was more than that because as I explained with miss Shaw mr. basic was on that on that trip to Fargo as well and he transferred that spray bottle while they were traveling in the car to mr. and again did the same when they were shopping in Fargo and again did the same at Buffalo Wild Wings when they were out at a restaurant eating together in Bismarck mr. vote before your time before your time is up why don't you address the sufficiency of the evidence with respect to mr. basics participation in the conspiracy and and the agreement sure your honor and in there and I appreciate mr. McCabe was not the trial attorney so may he may not have recognized kind of the factual circumstances of what happened there so effectively mr. basic provided the PayPal account to of miss shop so this is miss Shaw's PayPal account magical mimsy in fact the trial evidence showed that it was her account because there were text messaging and instant messaging from miss Shaw's account with that same user ID that were presented so it was clear from the trial evidence that this was in fact miss Shaw's account mr. basic provided that PayPal account to mr. Atreba mr. Atreba had his sister pay the money into the PayPal account once that was done mr. Atreba met both miss Shaw and mr. basic and an apartment they had in Mandan North Dakota together confirmed that the money at that time miss Shaw retrieved the nasal spray bottle from her purse provided it to mr. basic who provided it to mr. Atreba so there was while there was no discussion in specific and evidence of that agreement the circumstances of that were clear that there was an agreement between miss Shaw and mr. basic to in fact distribute that substance to other people mr. Atreba in particular on this occasion and mr. Atreba further testified that when they were together there were multiple occasions when miss Shaw commented to mr. basic that she needed to have this solution sold where she could make money so putting that all together as well as simply that the trip and the circumstances of the travel to Fargo and the Buffalo Wild Wings where it's always mr. basic when the request is made retrieving that from miss Shaw or mr. Atreba to use and as well as the occasion when mr. basic asked mr. Atreba to go was retrieve the solution from miss Shaw at her apartment in the ice mountain water model all of those circumstances demonstrated there was in fact an agreement between miss Shaw and for profit to other people and I know nobody else has really touched upon the the issue of the water bottles there were multiple water bottles that were found in mr. mr. basics apartment at the time they were not seized and so there was no specific analysis of those but mr. Atreba discussed that in fact it was the water bottles that were utilized to contain this solution and that were being utilized to fill the nasal spray bottles so when he was asked by mr. basic to go retrieve the water bottle from miss Shaw when miss Shaw and mr. basic were living apart at the time even though they were married so he went from mr. basics apartment over to miss Shaw's apartment and asked for the water bottle she transferred it to him there was approximately two inches of liquid in that water bottle that he then brought over to mr. basic and mr. basic thereafter filled the nasal spray bottle for mr. Atreba to use so you know that's all part of the drug quantity calculation as well so it fits within not only the elements of the conspiracy demonstrating an agreement but it's also part of the drug quantity calculation that the court that the trial court took into consideration in approximating the total scale of the offense conduct because two inches of liquid within water pictures that were in evidence would be way more way more nasal spray bottles could have held in the trial court easily make that determination just based upon the containers that it had in evidence not only the nasal spray bottles but the photos of of the water bottles that were there at mr. basics apartment so again there was plenty of actual trial evidence for the district court to make its factual findings part of the issue with miss Shaw's argument is she is suggesting that the trial court couldn't make these evidentiary findings unless it had a transcript well we have trial juries who make determinations of guilt or innocence in almost every case without ever having any sort of transcript the trial judge sat through the trial he listened to the testimony just like jurors do he was there's he could easily make his findings based on his recollection of what those witnesses testified to just like a juror can make a determination of guilt or not guilty based upon what they hear without a transcript and this court has never said that a trial court judge is required to have a transcript in order for it to rely upon the trial evidence so with that your honors I would ask that you affirm of the judgment in this case thank you mr. Volk mr. Zuber I believe you have a little bit of rebuttal time thank you your honor so just a couple of points mr. Volk's correct that there are only two bottles seized one was weighed it was eleven point six nine grams the other bottle this wasn't mentioned but I think it was mentioned in the briefing mr. gets a forensic analyst dropped the bottle so it has zero weight so rather than applying a zero weight for sentencing they apply 11 grams which I think is just patently absurd and with respect to the foundation I mean my issue in this case for both of the issues that I'm appealing is we're really talking about an illusory foundation because there's a simple question that could have been asked you know and I don't know what the witnesses would have said because it wasn't asked but without somebody actually saying that it's the same or similar weight and that there were either the same or different bottles that type of thing you can't jump to the conclusion that there's a higher amount because the the conclusion that was reached was that it was essentially the worst case scenario for my client and with respect to the vague and ambiguous statements again there's no operative facts but the court read in the operative facts of speaking to law enforcement and speaking about the the subject matter of the statements so for that reason I'm asking that the instructions to impose a base offense level of 24 no obstruction enhancement in a which would warrant a 63 to 78 months of imprisonment thank you runners Thank You mr. sugar mr. McCabe thank you under it just real quick I mr. basics I think strongest points are that in the sentencing judge Hovland did not make a finding as to within the scope or in furtherance of the criminal conspiracy his finding there was a common scheme and practice and I think the court had to make those findings under the guidelines in order to find that there was a reasonable foreseeability of this so I I think just a lack of a record of those finding is very important to this court and then the second issue again there was a third circuit court cited because we don't seem to have a case right on point for the issue about the approximation but but you know this issue about speculation versus estimation I think is so important because we are speculating on whether or not a bottle was used versus a spray and the second thing we're speculating on is whether or not there was anything in these bottles or how much was in these thank you thank you mr. McCabe or appreciates your arguments and your cooperation with our doing this by video the case will be submitted and decided in due course and further mr. Zuber mr. McCabe we appreciate your willingness to accept the appointment even though you weren't trial counsel so thank you for for that and with that this case will be submitted madam deputy